USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/3/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- X

DESARROLLADORA FARALLON S. DE
R.L. DE C.V.,

                      **Plaintiff,**

               - against -

CARGILL, INC., CARGILL FINANCIAL
SERVICES INTERNATIONAL, INC.,
CARVAL INVESTORS, LLC, RAMSFIELD
HOSPITALITY FINANCIAL, MATTHEW
BOGART, and THOMAS HUETTNER,

                   **Defendants.**

--------------------------------------------------------- X

**OPINION AND ORDER**

**15-cv-0532 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

          Plaintiff brings this diversity action against defendants alleging breach of an implied-in-fact joint venture agreement and related claims arising out of the operation and management of a luxury resort in Cabo San Lucas, Mexico (the "Resort"). Defendants now move to dismiss the First Amended Complaint, arguing that all claims therein are precluded by the Trust Governance Agreement ("TGA") between plaintiff and a non-party entity controlled by defendants. For the reasons described below, defendants' motion is GRANTED.

## II.    BACKGROUND[1]

### A.    The TGA

Plaintiff and defendants entered into an agreement on May 17, 2006 to work together to construct, develop, and manage the Resort in Cabo San Lucas, Mexico,[2] with plaintiff contributing the real estate (23.7 acres of waterfront property) and defendants contributing fifteen million dollars.[3]  On that same date, plaintiff and a specially created Cargill, Inc. ("Cargill") subsidiary, Mexvalo, entered into a business trust (the "CP Trust") as required by Mexican law.[4]

The TGA governs the actions of the CP Trust, and of plaintiff and Mexvalo in regards to the CP Trust.  The preamble to the TGA states that its purpose is:

> (a) to lay down the terms and conditions that will govern the relationship among the Parties, in the capacity of the Trust Participants as the holders of participation interests of the Trust, also prescribing the rules of conduct to be followed by the Parties and their representatives in the Trust's management bodies and with respect to the [Resort] . . . [and]

---

[1]    All facts recited herein are taken from the First Amended Complaint ("Compl.") unless otherwise noted.

[2]    *See* Compl. ¶ 34.

[3]    *See id.* ¶ 35.

[4]    *See id.* ¶ 38.

       (c) to determine the Parties' rights, obligations and responsibilities.[5]

The TGA further provides that "The Trust Participants agree that this Agreement forms the understanding of the manner in which they will administer . . . all matters regarding the Trust, including . . . all matters relating to the ownership and operation thereof and the [Resort]."[6]  It includes a mandatory arbitration clause,[7] and an integration clause specifically terminating all prior agreements "relative hereto which are not contained herein."[8]  The integration clause further prohibits oral modifications to the TGA, requiring modifications to be made by written amendment.[9]

The TGA provides that "the business affairs of the Trust shall be exclusively directed by a committee of persons appointed in writing pursuant to Section 5.02 (the 'Technical Committee')."[10]  The two beneficiaries of the Trust

---

[5]     CP Project Trust Governance Agreement dated as of May 17, 2006 (the "TGA"), Exhibit A to the 10/7/15 Declaration of Michael I. Verde, defendants' counsel, at 2.

[6]     *Id.* § 1.02.

[7]     *See id.* § 11.06.

[8]     *Id.* § 11.14.

[9]     *See id.*

[10]     *Id.* §5.01.

(plaintiff and Mexvalo) and the original developer of the Resort each appoint one member of the three-person Technical Committee.[11]  Each member of the Technical Committee "shall act at the exclusive direction of, be the agent of and shall be free to represent the views and positions of such appointing party."[12]  The Technical Committee is given sole power "to make decisions on behalf of and exercise control over the Trust's business, affairs or operations."[13]  Finally, the TGA expressly disclaims any heightened obligations between the parties, providing that "each Party and its respective Affiliates shall be free to engage in investments or possess an interest in other business ventures or commercial dealings of every kind and description, without accounting to the Trust or any party in respect thereof."[14]

### B.   The Joint Venture

The joint venture agreement predates the TGA and governs an agreement between plaintiff and defendants to develop and run the Resort that is broader than the agreement contained in the TGA.[15]  Plaintiff does not provide any

---

[11]   *See id.* § 5.02.

[12]   *Id.* § 5.01(a).

[13]   *Id.* § 5.01(c).

[14]   *Id.* § 5.04(c).

[15]   *See* Compl. ¶ 39.

further information regarding the scope or terms of the joint venture agreement in its Complaint.[16]

### C.   The Alleged Breach of the Joint Venture

The CP Trust, operating under the TGA, sought and obtained financing for and began development of the Resort.[17]   The parties negotiated a loan agreement with the New York branch of WestLB, a German bank, to fund the Resort's construction.[18]   When WestLB failed to provide an intended second round of funding, defendants offered Ramsfield Hospitality Financial ("RHF") as an alternative source of short-term funds, without notifying plaintiff that RHF was controlled by Cargill, Inc.[19]   Instead of accepting a loan from RHF, the CP Trust

---

[16]     In its opposition papers, plaintiff explains that the joint venture is an implied-in-fact joint venture created by plaintiff's and defendants' conduct both prior and subsequent to the signing of the TGA.   "[T]he TGA does not constitute the entirety of the agreements between the Parties, since it is not a comprehensive agreement that covers all aspects of the Parties' relationship. . . . Defendants Cargill Financial and CarVal engaged in business not only with and through the CP Trust, but also with Farallon directly."   Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amended Complaint ("Pl. Mem.") at 16.   However, as described further below, the behavior cited by plaintiff as evidence of this wider relationship is uniformly covered by the terms of the TGA.

[17]     *See* Compl. ¶ 47.

[18]     *See id.* ¶ 48.

[19]     *See id.* ¶¶ 49-52.   RHF subsequently became the Resort's asset manager upon defendants' recommendation; plaintiff was not made aware of

decided to secure funding through a partner loan, with defendants providing most of the funds.[20]  Defendants promised to restructure this loan, but failed to do so.[21] The CP Trust later defaulted on this loan, accruing default interest charges payable to defendants.[22]

   In 2014, after the CP Trust had defaulted on its debt, defendants arranged for a separate Cargill subsidiary, Cargill SOFOM, to purchase the loan from WestLB.[23]  After the purchase, Cargill SOFOM foreclosed on the beneficial interest in the CP Trust.[24]  Defendants then used a provision in the WestLB loan to prevent plaintiff from accessing the Resort's books and records, to exclude plaintiff from the Resort's business premises, and to remove plaintiff's representative from the Technical Committee — allowing defendants to take full control of the Resort.[25]  Defendants have subsequently managed the Resort in a

---

RHF's connection to defendants before consenting to the appointment.  *See id.* ¶¶ 61-69.

[20]  *See id.* ¶ 53.

[21]  *See id.* ¶¶ 53-54.

[22]  *See id.* ¶ 88.

[23]  *See id.* ¶¶ 84-85

[24]  *See id.* ¶ 86.

[25]  *See id.* ¶ 89.

manner that plaintiff alleges harms both the Resort and plaintiff's interest in it.[26]

Plaintiff alleges that these actions violate the terms of the implied-in-fact joint venture agreement between the parties, and constitute a breach of the fiduciary duties that arose from said agreement.

### D.   Procedural Background and Related Claims

Plaintiff filed this action on January 23, 2015.  On April 22, 2015, Mexvalo commenced an ICC Arbitration pursuant to the terms of the TGA alleging damages due to certain conduct by plaintiff that is irrelevant to this action. Plaintiff filed counterclaims in that arbitration on June 4, 2015, alleging near-identical claims as those pled in this action — except framed as violations of specific provisions of the TGA, as opposed to the alleged joint venture.

Plaintiff has also brought a claim against Mexvalo in New York state court.  In that case, it names Mexvalo — not the defendants in this action — as its "joint venture partner."

### III.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true and draw[ ] all

---

[26]   *See id.* ¶¶ 101-122.

reasonable inferences in the plaintiff's favor."[27]  The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*.[28]  Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[29]  For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[30]  Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[31]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32]  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[33]

When deciding a 12(b)(6) motion to dismiss, "a district court may

---

[27]     *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

[28]     *See* 556 U.S. 662, 678-79 (2009).

[29]     *Id*. at 679.

[30]     *Id*. at 678 (citation omitted).

[31]     *Id*. at 679.

[32]     *Id*. at 678 (citation omitted).

[33]     *Id*. (quotations omitted).

consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[34]  "'[I]t is 'axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss.'"[35]

## IV.   APPLICABLE LAW

### A.   Choice of Law

"A federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state."[36]  Under New York law, "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved."[37]  Absent an actual conflict, "New York, as the forum state, would apply its law."[38]  If there is an actual conflict, the Court then determines which law applies based on the "center of gravity" or

---

[34]    *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[35]    *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 451 (S.D.N.Y. 2014) (quoting *O'Brien v. National Prop. Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y. 1989)).

[36]    *GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2006).

[37]    *Id.* (citation omitted).

[38]    *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 422 (2d Cir. 2006).

"grouping of contacts" test.[39]  Under this approach, the Court considers a spectrum of significant contacts, including the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domiciles or places of business of the contracting parties.[40]  The party claiming that foreign law applies "'carries both the burden of raising the issue that foreign law may apply in an action and the burden of proving foreign law to enable the district court to apply it in a particular case.'"[41]

## B.    Leave to Amend

Rule 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written consent of the adverse party."[42]  Although "[t]he Court should freely give leave when justice so requires,"[43] it is "within the sound discretion of the district court to grant or deny leave

---

[39]    *GlobalNet*, 449 F.3d at 383.

[40]    *See In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 227 (1993).  The traditional choice of law factors — place of contracting, place of negotiation, and place of performance — are given the heaviest weight in this analysis. *See id.*

[41]    *Bigio v. Coca-Cola Co.*, No. 97 Civ. 2858, 2010 WL 3377503, at *4 (S.D.N.Y. Aug. 23, 2010) (quoting *Baker v. Booz Allen Hamilton, Inc.*, 358 Fed. App'x 476, 481 (4th Cir. 2009)).

[42]    *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citation and quotation marks omitted).

[43]    Fed. R. Civ. P. 15(a)(2).

-10-

to amend."[44]  When a motion to dismiss is granted, "'[i]t is the usual practice . . . to allow leave to replead.'"[45] Where a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to amend is futile and should be denied.[46]

## V.    DISCUSSION

Plaintiff's claims fail for two separate and independently fatal reasons. *First*, plaintiff has not pled — and cannot plead — the terms of an implied-in-fact joint venture agreement between the parties.  *Second*, even if the joint venture agreement had been adequately pled, any preexisting agreement relating to the TGA was terminated by the integration clause in the TGA.  Without the alleged joint venture on which to rely, all of plaintiff's claims fail.

### A.    Insufficient Pleading of the Alleged Joint Venture

Rule 8 of the Federal Rules of Civil Procedure requires a pleading that states a claim for relief to contain "a short and plain statement of the claim."  In the context of a claim for breach of contract, this requires an allegation of "'the terms

---

[44]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

[45]    *Heckman v. Town of Hempstead*, 568 Fed. App'x 41, 43 (2d Cir. 2014) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[46]    *See Smith v. United States*, 554 Fed. App'x 30, 32 (2d Cir. 2013).

of the contract, each element of the alleged breach and the resultant damages.'"[47]

In its Complaint, plaintiff continually refers to the existence of a joint venture agreement, but gives no details of the agreement itself: not the offer, the acceptance, the terms of the agreement, or evidence of the parties' consent to those terms.  Instead, there is simply an assertion that the parties entered into an implied joint venture agreement on May 17, 2006 — the same date Farallon and Mexvalo signed the TGA.[48]  The behavior of the parties as alleged in the Complaint — which plaintiff claims is evidence of an implied-in-fact joint venture agreement — is nothing more than a recitation of terms taken directly from the TGA.[49]  While

---

[47]    *Dynamic Worldwide Logistics, Inc. v Exclusive Expressions, LLC*, 77 F. Supp. 3d 364, 375 (S.D.N.Y. 2015) (quoting *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 624 (S.D.N.Y. 2013) (dismissing a breach of contract claim for failure to identify any express or implied contractual terms)).

[48]    *See* Compl. ¶ 34.

[49]    *Compare, e.g.*, *id.* ¶ 35 ("Early on in the Joint Venture, Farallon contributed 23.7 acres of waterfront property . . . while the Cargill Parties contributed $15,000,000 in cash in exchange for a minority stake) *with* TGA § 1.01 ("'Initial Capital Contribution' means, with respect to (i) Farallon, an in-kind contribution of the Property . . . and (ii) Mexvalo, the Cash Capital contribution equivalent to fifteen million Dollars."); Compl. ¶ 40 ("From the beginning of the Joint Venture, the Cargill Parties and Farallon agreed that the technical committee would always be comprised of three individuals: (1) a representative of the Cargill Parties, (2) a representative of Farallon, and (3) a representative of HVI . . . .") *with* TGA § 5.02(a) ("The Technical Committee shall consist of three (3) members with each member having one vote and being appointed by one of [Farallon, Mexvalo, and HVI].").

Rule 8 certainly does not require a plaintiff to plead every detail of an implied contract in order to proceed on a claim for breach, merely stating that an implied agreement existed and was breached is insufficient.  The Rule requires more than what plaintiff has provided in its Complaint.  By the same token, such a conclusory allegation does not meet the "plausibility" standard of *Ashcroft v. Iqbal*.[50]

Granting plaintiff further leave to amend would be futile.  Even after this Court granted plaintiff leave to amend its Complaint, plaintiff has failed to adequately plead the existence of an implied-in-fact joint venture agreement between itself and the Cargill parties.  The Complaint simply asserts that such an agreement exists.  Plaintiff's briefing reveals that plaintiff is incapable of providing further detail as to the alleged joint venture agreement, because no such detail exists.  The alleged joint venture covers the same project as the TGA, is between essentially the same parties as those that signed the TGA, and evinces no different relationship among the parties than that covered by the TGA.  The only difference between the TGA and the alleged joint venture agreement is that the joint venture agreement is not memorialized in writing, and therefore conveniently excludes the disclaimer of fiduciary duties and the dispute resolution provisions contained in the TGA that block plaintiff's claims in this Court.  Furthermore, as described below,

---

[50]     *See* 556 U.S. at 678.

even a sufficiently pled joint venture agreement would not salvage plaintiff's claims.  Therefore, leave to amend is denied.

**B.     Primacy of the TGA and Failure of Plaintiff's Claims**

Even assuming plaintiff adequately pled the existence of an implied-in-fact joint venture agreement, this agreement would have been terminated by the express terms of the TGA.  Without the joint venture agreement on which to rely, all of plaintiff's claims relating to the joint venture agreement fail as a matter of law.

**1.     Choice of Law**

Plaintiff submits affidavits from two Mexican lawyers purporting to demonstrate a conflict between Mexican and New York law requiring this Court to apply Mexican law to plaintiff's claims.  As the party asserting that foreign law applies, plaintiff has the burden both of bringing the perceived conflict of laws to the Court's attention and of proving foreign law sufficient for this Court to resolve the choice of law issue.

Plaintiff has not demonstrated a conflict between Mexican and New York law as to the applicability of merger and integration clauses or the existence and waiveability of fiduciary duties between contracting parties.  On the contrary, the affidavits from Dr. Claus von Wobeser and Jose Victor Torres Gomez both

indicate that parties to a contract are bound to the express terms of that contract.[51]

Neither directly opines on the enforceability of integration and merger clauses

under Mexican law.  Neither opines on whether the "good faith obligations"[52]

imposed on all parties in formal business relationships are waiveable.[53]  The

affidavits merely demonstrate that Mexican law — like New York law — enforces

unambiguous terms of contracts and recognizes certain implied covenants of good

faith and fair dealing.  Because there is no demonstrated conflict between the New

York and Mexican formulations of these fundamental principles of contract law,

New York law controls.[54]

---

[51]     *See* 10/28/15 Affidavit of Dr. Claus von Wobeser, Esq. ("Wobeser Aff."), ¶ 10 (Under Mexican law, parties to a contract are bound . . . by the content of the agreement itself . . . ."); 10/28/15 Affidavit of Jose Victor Torres Gomez, Esq., ¶ 9 ("Parties are certainly bound by what they expressly agree upon . . . .").

[52]     Pl. Mem. at 14.

[53]     Though the Court notes that Dr. Claus von Wobeser alluded to the waiveability of certain "natural clauses" read into all contracts under Mexican law. *See* Wobeser Aff. at ¶ 10.

[54]     I would reach the same result even if there were a conflict and I were required to conduct a "grouping of contacts" analysis under New York law. Plaintiff asserts that its claims "arise from [defendants'] business transactions in New York, including those transactions with CarVal, RHF, and WestLB." Compl. ¶ 13.  The alleged actions giving rise to the Complaint — defendants' purchase of the construction loan from WestLB and subsequent actions in respect to the Resort under their new-found control of the Resort's debt — all arise in New York, not Mexico.  Other than the fact that plaintiff is domiciled in Mexico and the Resort is located in Mexico, there is no reason to find that Mexican law should control.  The

### 2.    Disposition of Claims Under New York Law

The alleged joint venture agreement — an unwritten agreement predating the TGA — was terminated on May 17, 2006 by the TGA's merger and integration clause.  To the extent plaintiff argues the joint venture came into existence after the execution of the TGA, the TGA's requirement that all amendments to or variations on the TGA be reduced to writing blocks the creation of the joint venture as a matter of law.  This is the case even though the TGA is between plaintiff and the nonparty Cargill subsidiary Mexvalo. When there is both a written and unwritten contract, the written contract is upheld if it governs the same subject matter as the unwritten or implied contract, even if the parties to these agreements are not identical.[55]  This is in line with the express terms of the TGA, which terminated all agreements *relating to* the TGA without regard to the identity of the parties in these related agreements.[56]

Plaintiff contends that the alleged joint venture agreement and the TGA cover different subjects, but the Complaint belies this assertion — the alleged joint venture and the TGA both concern the parties' development and management

center of gravity for this particular dispute clearly lies in New York.

[55]    *See, e.g.*, *Air Atlanta Aero Engineering Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196-97 (S.D.N.Y. 2009).

[56]    *See* TGA § 11.14.

of the Resort.  Because the TGA governs the same subject matter as the alleged joint venture agreement, the joint venture agreement is unenforceable.  Plaintiff's claims for breach of the alleged joint venture therefore fail as a matter of law.

Plaintiff's remaining claims fare no better.  Plaintiff's claims based on a breach of a fiduciary duty created under the joint venture agreement fail because the alleged source of the duty — the implied-in-fact joint venture agreement — was terminated by the TGA.  Plaintiff's claims for unjust enrichment must also fail, as "decisions . . . in this district have consistently held that claims for unjust enrichment may be precluded by the existence of a contract governing the subject matter of the dispute, even if one of the parties to the suit is not a party to the contract."[57]  The TGA addresses the development and management of the Resort, and terminated the alleged joint venture agreement.  The unjust enrichment claim is therefore precluded as a matter of law.

RHF cannot be liable for aiding and abetting a breach of a nonexistent fiduciary duty.  In the absence of any fiduciary duties between the parties, plaintiff is not entitled to an accounting.[58]

---

[57]   *American Med. Ass'n v. United Healthcare Corp.*, No. 00-cv-2800, 2007 WL 683974, at *10-11 (S.D.N.Y. Mar. 5, 2007).

[58]   *See, e.g.*, *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 323 (S.D.N.Y. 2010).

### C.      Plaintiff's Tortious Interference Claim

This leaves plaintiff with its claim for tortious interference with an existing business relationship — the one claim in the Complaint not related to a breach of the alleged joint venture agreement.  Under New York law, the elements of a claim for tortious interference are: (1) business relations with a third party, (2) the defendant's interference with those business relations, (3) the defendant's acting with the sole purpose of harming the plaintiff or the use of dishonest, unfair, or improper means in so acting, and (4) injury to the business relationship.[59] Plaintiff alleges defendants damaged plaintiff's relationship with the Gleason family, a third party that provided a six million dollar loan to the CP Trust to fund construction of the Resort.[60]  While the pleading alleges defendants improperly accused plaintiff of "greenmailing" the Resort with the intent to damage the relationship between plaintiff and the Gleason family, it does not allege that defendants acted with the *sole* purpose of harming plaintiff, and does not allege that the assertions made to the Gleason family were dishonest.  Plaintiff has failed to state a cause of action for tortious interference.  Nonetheless, because plaintiff could allege facts correcting these deficits in its pleading, leave to further amend

---

[59]     *See Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000).

[60]     *See* Compl. ¶¶ 165-167.

the Complaint is granted for this claim alone.

## VI.    CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED.  Leave to amend is granted as to plaintiff's tortious interference claim only.  Any amended pleading must be filed within twenty-one days of the date of this Order.  The Clerk of the Court is directed to close this motion (Dkt. No. 18).  The premotion conference scheduled for December 18, 2015 at 4:00 PM is cancelled.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 3, 2015

-19-

**- Appearances -**

**For Plaintiff:**

John Balestriere, Esq.
Jillian McNeal, Esq.
Balestriere, Fariello
225 Broadway
Suite 2900
New York, NY 10007
(646) 912-8463

Matthew Schmidt, Esq.
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
(212) 756-2000

**For Defendants:**

Michael Verde, Esq.
Philip Nemecek, Esq.
Tenly Mochizuki, Esq.
Katten Muchin Rosenman, LLP
575 Madison Avenue
New York, NY 10022
(212) 940-8800