UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

DESARROLLADORA FARALLON S. DE
R.L. DE C.V.,

           **Plaintiff,**

      - against -

CARGILL, INC., CARGILL FINANCIAL
SERVICES INTERNATIONAL, INC.,
CARVAL INVESTORS, LLC, RAMSFIELD
HOSPITALITY FINANCIAL, MATTHEW
BOGART, and THOMAS Huettner,

          **Defendants.**

------------------------------------------------------- X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 4/29/16 |

**OPINION AND ORDER**

**15-cv-0532 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

      On December 3, 2015, this Court granted defendant's motion to

dismiss the Complaint. Plaintiff filed this motion for post-judgment relief on

March 4, 2016, pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil

Procedure. Plaintiff argues that new evidence has emerged during a related

arbitration proceeding that would have affected this Court's decision on

defendants' motion to dismiss, and asks this Court both to vacate its judgment and

to grant leave to amend the Complaint to incorporate this newly discovered

evidence. Defendants argue that the evidence (a) is not new at all, and (b) would

not, and could not, have impacted this Court's decision on defendants' motion to dismiss.  For the following reasons, plaintiff's motion is DENIED.

## I.      BACKGROUND

Plaintiff's claims in this case revolve around an alleged implied-in-fact joint venture agreement to construct and manage a luxury resort, entered into between plaintiff and all defendants.  When I dismissed the Complaint, I did so for two separate and independent reasons: *First*, I found that plaintiff had failed to adequately plead the terms of this alleged implied-in-fact joint venture, and *second*, even if such an implied joint venture existed, it was replaced by a later, written Trust Governance Agreement ("TGA") that contained a merger and integration clause, terminated all agreements related to the construction and management of the resort, and covered the same relationship as the alleged joint venture.[1]

Plaintiff now seeks to vacate this Opinion and Order based on allegedly new evidence taken from witness statements submitted by Mexvalo — a wholly owned subsidiary of defendant Cargill Financial Services International, Inc. ("Cargill Financial")  — in a related arbitration proceeding that took place in January of this year.  Plaintiff argues these witness statements contain admissions by defendants demonstrating that the parties had agreed to form an implied-in-fact

---

[1]      *See Desarrolladora Farallon S. De R.L. De C.V. v. Cargill, Inc.*, No. 15 Civ. 532, 2015 WL 7871040, at *4 (S.D.N.Y. Dec. 3, 2015).

joint venture that survived plaintiff's entering into the TGA, and that defendants

believed they were operating under a joint venture agreement after the TGA was

signed.[2]

####    A.    Statement of Adam Bernier

The first witness statement is by Adam Bernier, a former employee of

defendant Cargill, Inc.  Bernier testified to the process by which defendants

invested in certain property along with plaintiff, and how the resort was financed.[3]

On cross examination, Bernier gave the following statement:

> Q: Was it your understanding that Cargill Financial was
> entering into a joint venture with the Diaz Rivera family
> to develop this Resort?
>
> A: Yeah. As part of – within that [trust] structure,
> correct.[4]

####    B.    Statement and Communications of Thomas Huettner

The next witness statement is by Thomas Huettner, a former employee

of Cargill, Inc. and its subsidiary, defendant Carval Investors LLC ("Carval").

---

[2]     In oral argument, plaintiff admitted that it presents no new evidence of
the essential terms of this alleged joint venture agreement. *See* Transcript of
4/28/16 Oral Argument ("Tr.") at 25:21-25; 32:4-15.

[3]     *See* Statement of Adam Bernier, Ex. B to 4/8/16 Declaration of John
Balestriere in Support of Motion to Amend Judgment ("Balestriere Decl.") at B-2 -
B-9.

[4]     *Id.* at B-12.

Huettner describes the relationship between plaintiff and defendants in managing the resort, defendants' purchase of a construction loan against the resort, and the subsequent breakdown in the relationship between plaintiff and the Cargill group of companies.  Huettner neither uses the words "joint venture" nor describes a joint venture among the parties; however, he does describe how entities other than Mexvalo actively managed the day to day affairs of the relationship between Mexvalo and plaintiff in financing, constructing, and managing the resort.[5]

In cross examination, Huettner was shown an email he wrote to plaintiff dated May 11, 2011.[6]  The subject line on the email is "Capella JV restructuring."[7]  Huettner confirms that "JV" stands for "joint venture," and confirms that he referred to the relationship between the Cargill parties and plaintiff as a joint venture in that email.[8]  In a separate communication submitted with plaintiff's reply, Huettner tells an investor that "[y]ou obviously understand that [the resort] is a joint venture and not something owned or controlled solely by

---

[5]     *See* Statement of Thomas Huettner, Ex. C to Balestriere Decl.

[6]     This email was also appended to plaintiff's reply.  *See* 5/13/11 email by Thomas Huettner, Ex. S to 4/22/16 Declaration of Matthew W. Schmidt, counsel for plaintiff, in Support of Motion to Amend Judgment ("Schmidt Decl.").

[7]     *See* Testimony of Thomas Huettner, Ex. O to Balestriere Decl., at 706:21-24.

[8]     *See id.* at 706:25-707:7.

-4-

Cargill subsidiaries."[9]  The investor complains that "[a] solution [to certain financial issues facing the resort] can only be attained through a meaningful dialogue with the parties to the Trust."[10]  Huettner stated in his testimony that he "used JV as shorthand . . . for the Trust."[11]

### C.   Statement of James Dingel

The next witness statement is by James Dingel, a Managing Director and Senior Counsel at Carval.  Dingel's statement only concerns the corporate structure governing the relationship between Cargill Financial, Carval, a third party Cargill entity known as Cargill SOFOM, and Mexvalo.[12]  He does not discuss whether there was a joint venture between the Cargill parties and plaintiff.  Dingel discusses how Mexvalo is a holding company for the Cargill parties' interest in the resort,[13] and how certain management decisions concerning the Cargill parties' interest in the resort were made by a committee of representatives from several of

---

[9]      9/13/12 email by Thomas Huettner, Ex. Q to Schmidt Decl.

[10]      *Id.*

[11]      Testimony of Thomas Huettner, Ex. O to Balestriere Decl., at 709:8-709:20.

[12]      *See* Statement of James Dingel, Ex. D to Balestriere Decl., at D-2 - D-5.

[13]      *See id.* at D-8 - D-9.

these companies.[14]

### D.    Statement of Matthew Bogart

The next witness statement is by Matthew Bogart, General Counsel and Chief Compliance Officer for Carval.  His brief statement discusses the purchasing of a construction loan against the resort, and rebuts certain miscellaneous allegations made by plaintiff concerning him during the arbitration.[15]  Bogart does not testify to the nature of the relationship between plaintiff and defendants.

### E.    Statement of Richard Holland

The next witness statement is by Richard Holland, the lead developer of the resort.  In his statement, he describes his firm's role in the actual construction of the resort, and in Cargill's acquisition of financing in the form of a construction loan it later purchased.[16]  He does not testify to the relationship between plaintiff and defendants.  In cross examination, Holland stated that "[t]he difference between Cargill Financial, Cargill, Inc., Mexvalo, and Carval was one

---

[14]    *See id.* at D-11 - D-14.

[15]    *See* Statement of Matthew Bogart, Ex. E to Balestriere Decl., at E-3 - E-7.

[16]    *See* Statement of Richard Holland, Ex. F to Balestriere Decl., at F-2 - F-8.

that we never treated as a technical distinction.  It was Cargill or Carval and those were interchangeable terms from the way we were practicing under the project."[17]

### F.      Statement of Miguel Alessio Robles

The next witness statement is by Miguel Alessio Robles, Cargill's expert on the law of Mexico.  Robles does *not* characterize plaintiff and defendants' relationship as a joint venture, or indeed use the word joint venture anywhere in his testimony.  His testimony is concerned first with describing the Mexican trust laws governing the TGA,[18] and second with rebutting certain of plaintiff's claims for relief in arbitration.  Robles also discusses the relationship between Mexvalo and plaintiff, describing how Cargill employees attached to Cargill SOFOM (as opposed to Mexvalo) represented the Cargill parties on the governing committee created by the TGA.[19]

### G.      Statement of Richard Mandel

The final witness statement is by Richard Mandel, president of Ramsfield, a non-party hotel real estate investor, lender, and asset manager.  His brief statement concerns Ramsfield's role as hotel manager at the resort, and rebuts

---

[17]      *Id.* at F-12.

[18]      *See* Statement of Miguel Alessio Robles, Ex. G to Balestriere Decl., at G-4 - G-5.

[19]      *Id.*

plaintiff's assertion that it was a potential financier of the resort's construction.[20] He does not testify as to the nature of the relationship between plaintiff and defendants.

Plaintiff also submitted statements made by plaintiff's management and plaintiff's Mexican legal expert in support of this motion. At oral argument, plaintiff conceded that these communications could not be new, as they come directly from the plaintiff and its expert and could have been produced at any time — certainly in plaintiff's amended pleadings. These statements are therefore not considered in deciding this motion.

## II.    LEGAL STANDARD

### A.    Standard Under Rule 59(e)

A motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure is appropriate only if the moving party establishes: (1) an intervening change in controlling law; (2) the availability of new evidence that was previously unavailable; or (3) the need to correct clear error or prevent manifest injustice.[21] Whether to grant a Rule 59(e) motion to alter or

---

[20]    *See* Statement of Richard Mandel, Ex. I to Balestriere Decl., at I-2 - I-4.

[21]    *See Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

amend a judgment is "committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion."[22]  Reconsideration of a court's previous order under Rule 59(e) is an "extraordinary" remedy, which is "to be employed sparingly in the interests of finality and conservation of scarce judicial resources."[23]

### B.    Standard Under Rule 60(b)

"Rule 60(b) was intended to preserve the delicate balance between the sanctity of final judgments and the incessant command of the court's conscience that justice be done in light of all the facts."[24]  Rule 60(b) does not provide ap arty with the opportunity to relitigate the merits of a case in an attempt to win a point already "carefully analyzed and justifiably disposed."[25]  Accordingly, motions for

---

[22]    *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983).

[23]    *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal citation omitted).

[24]    *Smalls v. United States*, 471 F.3d 186, 191 (D.C. Cir. 2006) (quotation marks, ellipses, and citation omitted).  *Accord Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) ("Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments.  In other words, it should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened.") (quotation marks and citations omitted).

[25]    *In re Bulk Oil (USA) Inc.*, No. 93 Civ. 4492, 2007 WL 1121739 , at *10 (S.D.N.Y. Apr. 11, 2007) (stating that a court should not "reconsider issues already examined simply because [a party] is dissatisfied with the outcome of [its] case.  To do otherwise would be a waste of judicial resources.") (quotation marks

relief from judgment under Rule 60(b) are generally disfavored in the Second Circuit.[26]

Rule 60(b) provides that a district court may relieve a party from a final judgment or order in five enumerated circumstances and, according to a sixth subparagraph, for "any other reason that justifies relief."[27] If any other subparagraph of Rule 60(b) is applicable, Rule 60(b)(6) will not apply.[28] The Second Circuit has held that "[m]otions under [R]ule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances."[29] In fact, "'[i]t is well established . . . that a proper case for Rule 60(b)(6) relief is only one of extraordinary circumstances, or

---

and citation omitted).

[26]     *See Empresa Cubana Del Tabaco v. General Cigar Co.*, 385 Fed. App'x 29, 31 (2d Cir. 2010) ("We have cautioned, however, that Rule 60(B) motions are disfavored. . . ."); *Simone v. Prudential Ins. Co. of Am.*, 164 Fed. App'x 39, 40 (2d Cir. 2006); *United States v. International Bd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001).

[27]     Fed. R. Civ. P. 60(b)(6).

[28]     *See Nemaizer*, 793 F.2d at 63.

[29]     *Mendell in behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) (citing *Nemaizer*, 793 F.2d at 61). *Accord Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994).

extreme hardship.'"[30]  The Second Circuit has set forth a three-prong test in order for a Rule 60(b) motion to succeed: (1) there must be "highly convincing" evidence in support of the motion; (2) the moving party must show good cause for failing to act sooner; and (3) the moving party must show that granting the motion will not impose an undue hardship on any party.[31]

Rule 60(b)(2) permits a court to relieve a party from a final judgment, order, or proceeding in the case of "newly discovered evidence that, with reasonable diligence, could not have been discovered [at the time of decision]." When a party seeks relief based on newly discovered evidence under Rules 59(e) and 60(b)(2), that party "must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or

---

[30]     *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004) (quoting *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1997) (quotation marks and citation omitted).

[31]     *Kotlicky v. United States Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987).

impeaching."[32]

### C.     Standard Under Rule 60(b)(3)

Rule 60(b)(3) provides for relief from judgment where there is "fraud . . . , misrepresentation, or misconduct by an opposing party."  It is well established that "a Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits."[33]  According to the Second Circuit, fraud upon the court "is limited to fraud which seriously affects the integrity of the normal process of adjudication" and embraces "'only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases.'"[34]  Examples of conduct that meet the definition of fraud upon the court include bribery of a judge, jury tampering, or hiring an attorney for the sole

---

[32]    *Becnel v. Deutsche Bank AG*, 838 F. Supp. 2d 168, 171 (S.D.N.Y. 2011).

[33]    *Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir. 1989).  *Accord King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) ("Fraud upon the court must be established by clear and convincing evidence.").

[34]    *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995) (quoting *Kupferman v. Consolidated Research & Mfg. Corp.* 459 F.2d 1072, 1078 (2d Cir. 1972) (internal quotation marks omitted)).

purpose of influencing a judge.[35]

## III.   DISCUSSION

Plaintiff has failed to meet the high burden set by each of these rules. As to Rule 60(b)(3), plaintiff presents no evidence of fraud, misrepresentation, or misconduct on the part of defendants.  Even viewed in the worst possible light, the witness statements submitted by plaintiff serve only to provide evidence of the existence of an alleged implied joint venture agreement predating the TGA.  The statements may also serve, if read in the light plaintiff urges this Court to read them, to impugn the credibility of defendants — an irrelevant consideration in the context of a motion to dismiss, where I have already taken each and every assertion made by plaintiff to be true, and drawn all reasonable inferences in its favor.  The alleged new evidence does *not* indicate defendants perpetrated a fraud on the Court such that the machinery of the Court could not function impartially.  Plaintiff's appeal to Rule 60(b)(3) can therefore be dismissed out of hand.

In reviewing plaintiff's arguments for reconsideration under Rules 59(e) and 60(b)(2),[36] this Court must determine (1) that the newly discovered

---

[35]   *See United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002).

[36]   Rule 60(b)(6) of the Federal Rules of Civil Procedure provides for relief from a judgment for "any [] reason that justifies relief," and may be considered only when no other subsection of Rule 60 applies.  While I find that plaintiff's Rule 60(b)(2) arguments fail, I also find that this case does not present

evidence was of facts that existed at the time of the motion to dismiss, (2) that

plaintiff was justifiably ignorant of them despite due diligence, (3) that the

evidence was admissible and probably would have changed the outcome, and (4)

that the evidence is not merely cumulative or impeaching.[37]  In doing so, I again

note that I had already taken all allegations in the Complaint as true for purposes of

deciding that motion.

      As previously noted, in granting defendants' motion to dismiss, I

determined both that plaintiff had insufficiently pled the existence of an implied-

in-fact joint venture agreement and that any such agreement would be

unenforceable as a matter of law.  At oral argument, plaintiff admitted that the

allegedly new evidence contained in the witness statements did not include new

terms for this implied-in-fact joint venture agreement.[38]  Therefore, plaintiff still

runs afoul of both Rule 8 of the Federal Rules of Civil Procedure and the

---

the sort of extraordinary circumstances or extreme hardship required by the Second
Circuit to grant relief under Rule 60's residual subsection.  Indeed, the
circumstances here could not be more ordinary: If plaintiff believes I erred in
deciding either this motion or defendant's motion to dismiss, it is free to appeal to
the Second Circuit (and indeed *has* appealed to the Second Circuit — plaintiff filed
an appeal on December 24, 2015, and stayed the appeal on March 8, 2016 to
pursue this motion). Plaintiff's application for relief under Rule 60(b)(6) is denied.

[37]   *Becnel*, 838 F. Supp. at 171 (S.D.N.Y. 2011).

[38]   *See* Tr. at 25:21-25; 32:4-15.

plausibility standard of *Ashcroft v. Iqbal*[39] — it provides no evidence of the "offer, the acceptance, the terms of the agreement, or evidence of the parties' consent to those terms."[40]  It merely asserts that the joint venture exists.[41]

Even if the terms of the implied-in-fact joint venture agreement were sufficiently pled, it would have had no impact on the outcome of defendants' motion to dismiss.  The only "new" evidence contained in the witness statements is that the Cargill parties worked together to finance, construct, and manage the resort, and that Mexvalo was a shell company designed to hold Cargill's legal interest in the resort's construction and management.  These are not new facts.  The Court explicitly considered the relationship between plaintiff, defendants, and Mexvalo in deciding defendants' motion to dismiss, including both Mexvalo's role as a special purpose vehicle and the Cargill parties' coordinated efforts to manage and direct the resort.

At that time, the Court was aware that Mexvalo was a special purpose

---

[39]    *See* 556 U.S. at 678.

[40]    *Desarrolladora Farallon S. De R.L. De C.V.*, 2015 WL 7871040, at *4.

[41]    In oral argument, plaintiff argued that the terms of the implied-in-fact joint venture were sufficient in plaintiff's amended pleadings, and that the new evidence presented in this motion made that clear. *See* Tr. at 16:7-16:13.  This amounts to an argument for reconsideration based on clear error; however, because plaintiff neither moved under nor briefed this argument, I disregard it.

vehicle designed to hold the Cargill parties' interest in the resort, and that Mexvalo had signed the TGA with plaintiff.  The Court also determined that it did not matter that Mexvalo, as opposed to a parent Cargill entity, had executed the TGA, because "[w]hen there is both a written and unwritten contract, the written contract is upheld if it governs the same subject matter as the unwritten or implied contract, even if the parties to these agreements are not identical."[42]  The TGA reduced the relationship between the Cargill parties and plaintiff to writing, and rendered any previous oral agreements unenforceable.  The witness statements presented here — showing that the Cargill parties had their own internal framework for managing Cargill's investment in the resort, and that employees assigned to other Cargill entities dealt with plaintiff — present neither new nor probative information.

There is one exception: the testimony and communications of Huettner, who referred to the relationship between defendants and plaintiff as a "JV" or "joint" relationship.  However, these minimal references by one person do not warrant relief from judgment.  Huettner is a businessman who, at the time of these communications, was responsible for managing certain aspects of the financial relationship between plaintiff, defendants, and the resort.  He is not a lawyer.  As he explained in his testimony, Huettner utilized the term "JV" as

---

[42]      *See id.* at *6  (citing *Air Atlanta Aero Engineering Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196-97 (S.D.N.Y. 2009)).

shorthand for the complex trust structure governing the relationship between the parties — a structure embodied in and governed by the TGA. While the communications and testimony do feature the words "JV" and "joint venture," and while these communications do post-date the signing of the TGA, these communications are between Huettner and plaintiff, were in plaintiff's possession at the time defendants' motion t dismiss was decided, and therefore cannot be newly discovered. Furthermore, it is likely that Huettner was simply using a shorter, simpler term than "fideicomiso" (the Mexican trust structure in use here), as opposed to voicing his reasoned opinion that plaintiff and defendants were operating under an implied-in-fact joint venture agreement different from and broader than the relationship embodied in the TGA. Plaintiff has failed to demonstrate that this new evidence, to the extent it is new, would have changed this Court's outcome. Its motion for post-judgment relief is therefore denied.

Case 1:15-cv-00532-SAS  Document 134  Filed 04/29/16  Page 18 of 19

## IV.   CONCLUSION

For the foregoing reasons, plaintiff's motion is DENIED.  The Clerk

of the Court is directed to close this motion (Dkt. No. 124).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 29, 2016

-18-

**- Appearances -**

**For Plaintiff:**

John Balestriere, Esq.
Jillian McNeal, Esq.
Balestriere, Fariello
225 Broadway
Suite 2900
New York, NY 10007
(646) 912-8463

Matthew Schmidt, Esq.
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
(212) 756-2000

**For Defendants:**

Michael Verde, Esq.
Philip Nemecek, Esq.
Tenly Mochizuki, Esq.
Katten Muchin Rosenman, LLP
575 Madison Avenue
New York, NY 10022
(212) 940-8800